**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOANN MULLIN,

                Plaintiff,

vs.                                              Case No. 3:07-cv-765-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I.   Status**

JoAnn Mullin ("Plaintiff") is appealing the Social Security Administrator's denial of her claim for Supplemental Security Income. Her alleged inability to work is based on the following impairments: decreased visual acuity, history of asthma and bronchitis, myalgia, hearing loss in the right ear, continued balancing problems causing her to fall often, and depression. Memorandum in Support of Complaint (Doc. No. 16; "Pl.'s Mem.") at 2-5. Plaintiff was found not disabled by Administrative Law Judge ("ALJ") William H. Greer, in a Decision entered on May 18, 2007. Transcript of Administrative Proceedings ("Tr.") at 13, 29. Plaintiff has exhausted the available administrative remedies and the case is properly before the Court.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 18).

Plaintiff argues the ALJ erred by failing to include all of her limitations when posing a hypothetical to a vocational expert to consider in determining whether Plaintiff could perform her past relevant work. Pl.'s Mem. at 5-7. Specifically, Plaintiff contends that the ALJ should have included evidence of her mental impairment in the hypothetical, such as Plaintiff's alleged suffering from anxiety and depression. Id. at 6-7. Defendant responds that four physicians' reports provide substantial evidence to uphold the ALJ's decision, and that Plaintiff has failed to show that she has limitations resulting from the alleged mental impairment. Memorandum in Support of the Commissioner's Decision (Doc. No. 19) at 7. The undersigned finds that there is substantial evidence in the record to support the ALJ's decision that Plaintiff's mental impairment is not "severe" as contemplated by the Social Security Act. Because the ALJ appropriately found that Plaintiff's alleged mental impairment is not "severe," he properly excluded the impairment from the hypothetical posed to the vocational expert. Accordingly, the Commissioner's decision will be **AFFIRMED**.

## II. Background

Plaintiff, who was born October 2, 1956, was fifty years old when her hearing was held before the ALJ on February 9, 2007. Tr. at 309, 496, 498-99. At the time of her hearing, Plaintiff was living with a friend, who provided her with some assistance. Id. at 64-66, 517-18. Plaintiff alleges that her onset date of disability was August 1, 1999. Id. at 63. Plaintiff's past relevant work includes working as a cashier, a driver, a package worker, a nurse's aide, and a factory worker. Id. at 77-83. She also performed some temporary work

in 2003 and 2004.[2]  Id. at 116, 500-01.  She was seen at a plethora of medical institutions for a number of issues, including visual difficulties, surgical procedures, and depression. Plaintiff's medical history is extensively detailed in the ALJ's decision, see id. at 20-24, and therefore is not repeated in full here.  Because Plaintiff's appeal only addresses her alleged mental impairment, this Court focuses on the records pertaining to Plaintiff's mental impairment.

### A. Evidence Regarding a Mental Impairment

Plaintiff received scattered treatment for mental problems between 1999 and 2007. There were two consistent periods of treatment.  The first was from late 1999 to 2001, when Plaintiff received treatment at the Clay County Behavioral Health Center.  Tr. at 117-135. During this period of treatment, Plaintiff repeatedly presented with symptoms of depression. Id. at 118-19, 122, 125, 129.  The second period of regular treatment was from 2005 to early 2007.  During this period of treatment, the Plaintiff was consistently advised to take or was taking one or more medications aimed at combating depression.  See id. at 133, 143, 217, 224, 260-64, 275, 284, 304, 306, 309, 318, 322, 340, 376-77, 406.

Plaintiff was also treated by two consultative psychologists for psychiatric evaluations. In May 2005, Dr. Lauren Lucas ("Dr. Lucas") assessed Plaintiff with having a "[g]uarded" prognosis, and indicated in her clinical impressions that Plaintiff suffered from "Pain Disorder with psychological and medical features [and] Dysthymic Disorder with anxiety." Id. at 142. Under the section entitled "**DETERIORATION IN WORK-LIKE SETTINGS**," Dr. Lucas

---

[2] Plaintiff indicated on the "Claimant's Work Background" form that the temporary work was performed at "The Pantry" in Callahan, Florida; "Accustaff/Randstad" in Jacksonville, Florida; and "Omni" in Jacksonville, Florida. Tr. at 116. At the hearing, she testified that she performed temporary work as a "driver" and "package worker," as well as a beverage packager for Bacardi. Id. at 500-01.

opined, "The client appears psychologically competent to perform a routine repetitive task and to appreciate the need for appropriate relations among co-workers and supervisors." Id.

In April 2006, Dr. Hazem Herbly ("Dr. Herbly") performed a psychiatric evaluation. See id. at 321-23. Dr. Herbly described Plaintiff's psychological history, including sexual abuse by her father when she was a child, a pattern of abusive relationships, and psychological trauma involving other members of her family. Id. at 321. Dr. Herbly noted that Plaintiff was alert and oriented to person, place and date, was adequately groomed, and had good eye contact. Id. at 322. Describing her affect as "more congruent for depression than anxiety," Dr. Herbly assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 65 and gave a guarded prognosis. Id. He changed her medication and recommended therapy. Id. He evaluated her again in July 2006 and found no serious mental issues other than a mildly depressed mood. Id. at 275. Dr. Herbly gave a similar analysis in September 2006, noting that Plaintiff still had a mildly depressed mood, but he also reported some positive signs, including that she was smiling more and coping well with the recent death of her mother. Id. at 487. In December 2006, Dr. Herbly noted that the Plaintiff's mood was "angry and irritable." Id. at 485.

Plaintiff's mental state was also assessed by two state agency physicians: Dr. Val Bee ("Dr. Bee") and Dr. A. Alvarez-Mullin ("Dr. Alvarez-Mullin"). Dr. Bee's June 2005 assessment on Plaintiff's Psychiatric Review Technique Form ("PRTF") indicated that Ms. Mullin had mild limitations on daily living activities, maintaining social functioning, and maintaining concentration, persistence or pace, and no episodes of decompensation. Id. at 150-162.

Dr. Bee stated in the evaluation that Plaintiff's "primary functional limitations are physical in nature." Id. at 162. Dr. Bee concluded that Ms. Mullin's "[m]ental impairment is not severe." Id. Dr. Alvarez-Mullin provided an almost identical analysis and diagnosis in September 2005. Id. at 190. Dr. Alvarez-Mullin diagnosed Plaintiff with Pain Disorder with Psychological and Medical Features and Dysthymic Disorder with Anxiety, id. at 192, and noted that Plaintiff's "[m]ental impairment [did] not appear severe." Id.

In 2006, Plaintiff was seen occasionally by Dr. Ed Paat ("Dr. Paat") for therapy sessions. In the majority of his overviews of sessions with Plaintiff, Dr. Paat has noted that Plaintiff denied having suicidal ideation or psychotic symptoms, and that her hygiene and grooming are good. Id. at 274, 277, 279, 314, 484, 486, 488. On one occasion in September 2006, Dr. Paat wrote, "Her concentration and focus seemed poor. Her speech was somewhat scattered." Id. at 489. Dr. Paat's most recent analysis in January 2007 noted a depressed mood and complaints of physical problems but was otherwise unremarkable. Id. at 484, 492.

### B.   The ALJ's Decision

After assessing Plaintiff's case, testimony, and medical and psychological history, the ALJ determined that Plaintiff suffered from the following "severe" impairments: decreased visual acuity, a history of asthma and bronchitis, and myalgia. Id. at 16. The ALJ did not consider Plaintiff's depression to be a "severe" impairment. Id. at 27. Omitting the purported effects of Plaintiff's depression, a hypothetical was posed to a vocational expert which included Plaintiff's residual functional capacity, as determined by the ALJ. Id. at 529-32. Based upon the hypothetical, the vocational expert testified that Plaintiff is capable of

performing her past relevant work as "cashier II," "driver," and "cashier/checker." Id. at 532. The ALJ determined that Plaintiff's impairments did not result in one of the established impairments listed in the regulations. Id. at 28. Relying partially on the vocational expert's testimony, the ALJ found that Plaintiff's impairments would not prevent her from performing work in the national economy. Id. In a decision entered on May 18, 2007, the ALJ ruled that Plaintiff was not disabled for purposes of receiving Supplemental Security Income and denied her claim. Id.

### III.  Legal Standard

This Court reviews the Commissioner's final decision as to disability[3] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). No special deference is accorded the application of legal principles; in turn, findings of fact "are conclusive if ... supported by 'substantial evidence[.]'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). A reviewing court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The decision of the Commissioner will not be disturbed, so long as it is supported by substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A).

**IV. Discussion**

Plaintiff's argument focuses on the ALJ's failure to include all of Plaintiff's "limitations" when posing the hypothetical to the vocational expert. Pl.'s Mem. at 5-7. Specifically, Plaintiff alleges that the ALJ erred in failing to include Plaintiff's "mental health issues" in the hypothetical. Id. at 5.

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry described in the Code of Federal Regulations, determining as appropriate whether the Plaintiff: 1) is currently employed;  2) has a severe impairment;  3) is disabled due to an impairment meeting or equaling one listed in the regulations;  4) can perform past relevant work;  and 5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). In the fifth step of the analytical procedure, the ALJ may pose a hypothetical question to a vocational expert as part of his evaluation in determining whether the claimant can obtain work in the national economy. See 20 C.F.R. § 416.920(a)-(f). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227(11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001). While the hypothetical question must include all of a claimant's impairments, it need not include impairments properly rejected by the ALJ. See McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987) (per curiam). To that end, the ALJ need only include "'severe' impairments when eliciting testimony" from the vocational expert. Bouie v. Astrue, 226 Fed.

App'x 892, 894 (11th Cir. 2007) (unpublished); see also Williams v. Astrue, 2008 WL 222683, at *8 (N.D. Fla. Jan. 25, 2008) (citing Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985)).

The following question was posed by the ALJ to Melissa Tanner Brooks, the vocational expert who testified at Plaintiff's hearing:

> I want you to assume a 50-year-old individual with the work background and education as testified to by the Claimant. I want you to assume the individual can sit up to eight hours per day, stand and walk up to six hours per day. Lift up to 20 pounds occasionally, 10 pounds frequently. No restrictions on simple grasping or fine manipulation. Occasional bending or stooping or crawling. Occasional stairs, occasional crouching, occasional kneeling, occasional reaching above shoulder level. No concentrated or excessive exposure to pulmonary irritants such as dust, fumes, or extremes in temperature or humidity.

Tr. at 529-30. After an exchange with Plaintiff and her attorney, the ALJ also included in the hypothetical that the individual would need certain types of print magnified to see them properly. Id. at 531. Based upon the hypothetical, the vocational expert opined that Plaintiff can perform her past relevant jobs of "cashier II," "driver," and "cashier/checker."[4] Id. at 532. The ALJ essentially adopted the vocational expert's opinion and found that Plaintiff is capable of performing those jobs; therefore, she is not disabled. See id. at 17.

The hypothetical did not include any restrictions resulting from a mental impairment, presumably due to the ALJ's finding that Plaintiff does not suffer from a severe mental impairment. In that regard, the undersigned must determine whether there is substantial evidence to support the ALJ's decision that Plaintiff's mental impairment is not severe.

---

[4] The difference between the cashier jobs being that "cashier II" works in a convenience store, while "cashier/checker" is a person who scans items at the grocery store. See Tr. at 532.

-8-

The determination of whether a mental impairment is "severe" depends on the condition's effect on a claimant's ability to work. "The 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that her allegations of depression and other mental health issues constitute severe impairments. Nigro v. Astrue, No. 8:06-cv-2134-T-MAP, 2008 WL 360654, at *3 (M.D. Fla. Feb. 8, 2008) (unpublished); see also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) ("[A] claimant bears a heavy burden of establishing the existence of a disability [by first showing] that her impairment prevents her from performing her previous work."). Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months." Davis v. Barnhardt, No. 06-11021, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing Barnhart v. Walton, 535 U.S. 212, 216 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen v. Yuckert, 482 U.S. 137, 148 (1987). The Code of Federal Regulations provides six examples of "basic work activities": (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to

supervision, co-workers, and unusual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-967.

Notably, while Plaintiff did not seem to focus on her mental impairment at her hearing before the ALJ, see Tr. at 589-520, there is significant evidence in the record of Plaintiff's history of treatment for depression. She has been treated and evaluated by a number of medical and psychological professionals. This treatment has been separated at times for periods of years, but medical and psychological analyses of Plaintiff have consistently noted that she has symptoms of depression. However, there is no indication in the record that Plaintiff's lengthy history of depression and subsequent treatment have had a significant impact upon her ability to work.

The ALJ assessed Plaintiff's mental health claim after providing an overview of the relevant medical and psychological evaluations of Plaintiff's mental status. Id. at 21, 23-24. The ALJ concluded that Plaintiff did have mild limitations in several areas, but that her mental impairment was "non[-]severe." Id. at 27. Specifically, the ALJ based his finding of a lack of a severe mental impairment on the following rationale:

> Multiple mental status examinations . . . have been essentially normal. After a psychiatric evaluation in April 2006, the claimant was given a GAF score of 65 which equates to mild mental limitations. The consultative psychologist who evaluated the claimant in May 2005 found that the claimant's major complaints centered around her physical problems and there was no indication of any decrease in the claimant's ability to concentrate. The file shows that most of her mental health counseling took place at Shands Jacksonville and for the most part mental status exams revealed a mildly depressed mood but no mention of any specific mental limitations.

Id. at 27.

The relevant section of the Social Security Regulations provides, "If we rate the degrees of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation to do basic work activities."[5]  20 C.F.R. § 404.1520a(d)(1); see also 20 C.F.R. § 404.1521.  The findings in Plaintiff's case fall within the guidelines set forth in § 404.1520a(d)(1).  Concurring with the analyses of Dr. Alvarez-Mullin and Dr. Bee, the ALJ found that Plaintiff had experienced mild limitations in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace, with no episodes of decompensation.  Tr. at 27.  The ALJ based his findings directly upon the opinions of state agency psychological consultants.  Similar or even more substantial functional limitations as determined by an ALJ and state evaluators in other cases have failed to support a determination that a claimant's mental impairment was severe.  See, e.g., Pettaway v. Astrue, No. 06-00880-WS-B, 2008 WL 1836738, at *16-17 (S.D. Ala. Apr. 21, 2008) (unpublished) (affirming the ALJ's finding was not severe when difficulties with concentration, persistence, or pace were classified as "moderate" rather than "mild"); see also Ward v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *2-3 (M.D. Fla. May 8, 2008) (unpublished) (all mild restrictions).

Plaintiff asserts that the ALJ did not effectively consider the assessments of Dr. Herbly and Dr. Paat.  See Pl.'s Mem. at 5-7.  Although those assessments are addressed below, the Court notes that while an ALJ will take the judgments of evaluating medical

---

[5] The four rated functional areas are: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. § 404.1520a(c)(3).

professionals into consideration, "the question of whether a claimant has a severe impairment or is disabled (that is, unable to work within the strictures of the Social Security Act) is reserved to the Commissioner, not a physician." Parsons v. Astrue, No. 5:06cv217/RS-EMT, 2008 WL 539060, at *7 (N.D. Fla. Feb. 22, 2008) (unpublished) (citing 20 C.F.R. § 404.1503).

In April 2006, Dr. Herbly diagnosed Plaintiff with possibly suffering from chronic depression and gave her a guarded prognosis, without commenting on Plaintiff's ability to work in light of this diagnosis. Tr. at 321-23. Other courts addressing analyses which were similar to Dr. Herbly's analysis of Plaintiff in this case have determined that the claimants' mental impairments were not severe and that the impairments would not interfere with the ability to work. See, e.g., Wind v. Barnhart, No. 04-16371, 133 F. App'x 684, 686-687 (11th Cir. 2005) (unpublished) (diagnosis of dysthymic disorder with chronic depressive symptoms and a later guarded prognosis; affirming ALJ's determination that the mental impairment was not severe); Collins v. Matthews, 456 F. Supp. 813, 818-822 (S.D. Ga. 1978) (chronic depression and guarded prognosis among the psychiatrist's findings; denial of benefits affirmed). Dr. Paat had occasional therapy sessions with Ms. Mullin in 2006 and early 2007. While his notes consistently indicate some level of depressed mood or anxiety, see Tr. at 274, 277, 279, 314, 484, 486, 488-89, 492, Dr. Paat similarly did not indicate that Plaintiff's mental health condition would interfere with her ability to work. See id. at 274, 277, 279, 314, 484, 486, 488-89, 492.

To classify an impairment as severe, there must be evidence in the record that shows that the impairment will interfere with a claimant's work activities. See McCruter, 791 F.2d

at 1547. This determination often turns on assessments by professionals. In this case, there is no mental assessment determining that Plaintiff's mental impairment will interfere with her ability to work. In fact, the only professional that commented on Plaintiff's ability to work reached the opposite conclusion. In Dr. Lucas' assessment, she determined that "[t]he client appears psychologically competent to perform a routine repetitive task and to appreciate the need for appropriate relations among co-workers and supervisors." Tr. at 142.

Plaintiff further makes note of her GAF score, pointing out that in April 2006, Dr. Herbly gave her a GAF score of 65. Pl.'s Mem. at 5; see also Tr. at 322. "The [GAF] Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations." Mathis v. Astrue, No. 3:06-cv-816-J-MCR, 2008 WL 876955, at *7, n. 4 (M.D. Fla. Mar. 27, 2008) (unpublished) (citing Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (4th ed. 1994) at 32). A GAF score of 61-70 indicates some mild symptoms as a result of the mental illness. Mathis, 2008 WL 876955, at *7, n. 4 (citing DSM-IV at 32).

While GAF scores have been frequently used in Social Security disability benefits determinations, courts have often given them limited weight. "Reliance upon a GAF score is of questionable value in determining an individual's mental functional capacity." Gasaway v. Astrue, No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) (unpublished) (citing Deboard v. Comm'r of Soc. Sec., No. 05-6854, 211 F. App'x 411, 415-416 (6th Cir. 2006) (unpublished)); see also Wind, 133 F. App'x at 692 n. 5 (noting that the

Commissioner of Social Security has indicated that GAF scores have no direct correlation to the severity of a mental impairment); Parsons, 2008 WL 539060, at *7 (same). Even so, a GAF score of 65 has recently been found to equate to a non-severe impairment. See Morris v. Astrue, No. 5:07-cv-30-Oc-10GRJ, 2008 WL 754723, at *4 (M.D. Fla. Mar. 19, 2008) (unpublished). Plaintiff's GAF score of 65, which points to mild difficulties, does not indicate a severe mental impairment.

A comprehensive review of the record shows that the ALJ's decision that Plaintiff does not have a severe mental impairment is supported by a number of factors regarding the Plaintiff's capacity to perform various activities. For example, she is able to drive and run errands, and she can read with the aid of a magnifier. Tr. at 69, 70, 530. She can effectively communicate by phone, watch television, and do some chores. Id. at 66, 70, 88, 100. Regarding Plaintiff's limited part-time work during the alleged period of disability, the ALJ specifically recognized that "even though none of the claimant's work activity that was performed in 2003 and 2004 was sufficient to constitute substantial gainful activity, when considered along with the medical evidence it does indicate a capacity to work." Id. at 27. Further, assessments from two state agency examiners concluded that Plaintiff has only mild limitations on daily living activities, maintaining social functioning, and maintaining concentration, persistence, or pace. Id. at 162, 192. Both examiners concluded that Plaintiff's mental impairment was not severe. Id. at 162, 192. These assessments, in addition to Plaintiff's other psychological evaluations and all other evidence in the record, provide substantial evidence to support the ALJ's decision. While the record shows Plaintiff's lengthy history of psychological treatment and using prescription medication for

depression, the record does not support Plaintiff's assertion that her mental impairment interferes with her ability to work. Accordingly, the ALJ's decision that Plaintiff's mental impairment was not severe is supported by substantial evidence.

Plaintiff asserts that the ALJ should have included the limitations resulting from her mental impairment in the hypothetical to the vocational expert. However, "[a]ccording to the Eleventh Circuit, only severe impairments must be considered when eliciting testimony from the [vocational expert]." Marin v. Comm'r of Soc. Sec., No. 6:07-cv-00461-Orl-31UAM, 2008 WL 619076, at *9 (M.D. Fla. Jan. 23, 2008) (unpublished) (emphasis in original); see also McSwain, 814 F.2d at 620 n.1; Williams, 2008 WL 222683, at *8 (citing Pendley, 767 F.2d at 1563); Bouie, 226 Fed. App'x at 894. As discussed supra, the ALJ found that Plaintiff's mental impairment was "non[-]severe," and that decision is supported by substantial evidence. The ALJ, having appropriately determined that Plaintiff's mental impairment was non-severe, acted correctly when he omitted from the hypothetical posed to the vocational expert Plaintiff's "mild" limitations in maintaining social functioning, activities of daily living, and maintaining attention, concentration, or pace resulting from her mental impairment.

### V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), **AFFIRMING** the Commissioner's decision.

    2.    The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on December 29, 2008.

                                            JAMES R. KLINDT
                                            United States Magistrate Judge

kaw
Copies to:
Counsel of record